Thanks for accommodating what is a little bit of an unusual scheduling for us to start at 3.30 in the afternoon, but there was a death case earlier, as you know, in this courtroom. Before we call the first case, Judge Kethledge and I would like to thank Judge William O. Bertelsmann from the Eastern District of Kentucky, who is sitting by designation with us today and tomorrow. The presence of district judges and other visiting judges are really helpful to us in trying to keep current with our documents, so thank you, Judge Bertelsmann. Thank you very much. You may call the first case. 141383, Covenant Medical Center, Inc. v. Secretary of Health and Human Services. Arguments not to exceed 15 minutes per side. Mr. O'Reilly for appellant. Thank you, and good afternoon. My name is Arthur O'Reilly. I represent Covenant Healthcare as the appellant in this matter. Have you reserved any time, Mr. O'Reilly? I would like to reserve five minutes, if I could. You may. I'd like to start where I hope the nub of the issue is, which is on the statutory interpretation question. And as to the collateral estoppel issues, rely on the briefs. Of course, I'll address any questions you might have, but I want to get to the heart of it. And I think the issue is squarely presented. It says, what does ACA 55404 mean? And does it say what the hospital says it means, which is that a reopening is required when you have a jurisdictionally proper pending appeal, as to GME and IME. And we, the hospital, say that it does. And we say that principally because that's what the statute says. And what I mean by that is that when you look at the text of the statute, 5504, which was amended to revise the existing law, it has three subsections, A, B, and C. And if you hone in on C, C says application, and that refers to language. And that language is pretty clearly stated therein. Let me have you pause right there for just a moment, if you would. I freely admit that I should know the answer to this question, but I don't. C appears in the Act. The Act modifies a whole bunch of different sections in the Social Security Act. Where do I, I can't find C in the codified version of the ACA. Where is it? It was not codified. Okay, so there is some significance then to the language right above that, that says 42 U.S.C.A. section 1395WW note. Yes. So this is a note. This is the note. And if you go back to the statute in the public law, that's where you find C. Am I wrong here, or haven't the parties really been treating C in the Act, which you've just conceded as a note, as statutory language? But it's not. Well, it is statutory language, it's just not codified. There are times when there are provisions, I think, that govern things like the scope of application that don't actually get built into the code itself, but it was still enacted as law. And here we have parties, I don't think anybody disputes the validity of it, and the agency in this case has built regulations around it as well. I'm just trying to find out, what is the significance of it being not codified and being a note, as opposed to having been codified? I don't know that it attaches any significance other than that the people who codify the statutes didn't include this particular subsection in the code itself. Well, they apparently didn't do that because it says note. That's right. It is not in the code, correct. But you treat it essentially for purposes of the argument as if it was codified, do you not? I treat it as a statute which is a duly enacted law passed by Congress that went through. It's binding on the government, and I don't think they dispute it. Okay. So if we look at the text of that section, and it says application, and you review that against A and B, and you say, well, what does this section mean? And it says the amendments made by this section shall not be applied in a manner that requires, quote, reopening of settled hospital cost reports, as to which there is not a jurisdictionally proper appeal pending as of the date of enactment of the ACA. So it took a snapshot as of the date of enactment, which is March 23, 2010, and said this is a snapshot we're taking. That's what C does. Isn't this ambiguous? Sorry, go ahead. Isn't this ambiguous? No, I don't think it is ambiguous. And the reason for that is that Congress sometimes doesn't say things as well as they could and sometimes even say things that have unintended consequences. It doesn't mean that it isn't binding. And you have to look and apply the traditional statutory canons to figure out what this section means. And when you look at this section, you say, well, why is it there? Now, the government has advanced a position that says it's essentially superfluous. It was designed to reinforce the fact that the agency has discretion. That can happen sometimes, right? Absolutely. I mean, you have to really exhaust every possibility, but that is a possibility. I mean, that is an acceptable conclusion theoretically. It's theoretically proper, though I'll say that you still do need to look at the law and understand what it means. But when you look at this, you say, okay, are there any other possibilities? And when you look at this statute, you say there are none. And the reason for that is that if you need to reopen, there's no other circumstances in which you'd reopen except to go back and to apply this statute to cost reports. Why is it a necessary conclusion when it tells the secretary what she doesn't have to do that it then by inference means what she does have to do? Right. Why does it mean anything more than what it says on the face? Well, I'll say this, Your Honor. If that were really what it meant, then I think Congress could have stopped writing. They could have dropped the pen at the word settled cost reports. They could have just said the amendments made by this section shall not be applied in a manner that requires reopening of any settled hospital cost reports, period. They went on, however, and described a very specific set of circumstances. That specific set of circumstances is when you have a snapshot on March 23, 2010. So it's what comes after that you say becomes superfluous. And that's really the challenge is that the government has advanced an argument that says, well, it's not superfluous or it is superfluous, but they don't account for that language because Congress could have said nothing and the government would be right. They could have dropped the pen where I said they could have dropped the pen and the government might be right, but they don't explain away the latter part of that section. You really do have to do that. And, Judge Kethledge, to your point, I'll note this as well. The case law in which the government relies and the case law that talks about superfluous language is a little bit more limited, I think, than we might give it credit for. If you look at some of those cases, they talk in terms of doublets, which I understand to be things like null and void, cease and desist, things that sound good together but really mean the same things. They also talk about overlapping sections in a code or statute in this case where the same language is employed in different spots. It doesn't address this circumstance. You have a body of case law under Medicare that was revised to give more to the hospitals because there was this cost that the hospitals were having to bear, and Congress intended this, and there's no dispute about that. Now, what do you do when Congress actually drafts a specific subsection that wasn't there before? I don't think the case law contemplates a circumstance where that is considered a superfluous note. You have to drive down and figure out what that language means. But once you go back to Judge Bertelsmann's question, once you have to drive down to figure out what it meant and you have to draw inferences from that, why is that almost, by definition then, not ambiguous? Well, and I think I understand where your honor is going. You're figuring out why is this case not in Chevron 2 World, if you will. Yeah, the next question would be about Chevron. To give an example, if I say to my chief law clerk, I don't want to interview any candidates for next year who don't have a B average, that doesn't mean I want to interview everybody who does have a B average. Well, and again, and I see why that's so, and that's why when you examine these circumstances, really the only reason why you do this is because you've taken a snapshot of the entire universe of what's out there. There's no reason to have done that unless you were saying to reopen. But to deal with your question in particular, your honor, Chevron 2, I think it's often used as a crutch. It shouldn't be, but it often is. You're not really trying to figure out how to apply the canons of construction to figure out what the language is. But there are circumstances, of course, where you do get to Chevron 2. I'm not sure that this is it. And the reason why I say that is that in your typical agency administrative law case, what you're trying to do is Chevron and its progeny says, well, the agency needs to figure this out because only they know how this statute operates and how the Medicare regime works and the like. This is a question about what do the words mean in context? And I don't know that that's a Chevron 2 discussion. But let's say we do get into Chevron 2 and we talk about, well, we're going to have to afford some discretion. Well, the government must have done something to deserve the discretion that's given to it or the deference, excuse me, that's given to it. And here you have to look at the record in the body. You say have they advanced a position that is actually plausible and reasonable on its face? It folds back into the Chevron 1 analysis. How did they explain away why Congress included the additional language? They don't do that. They don't do that and they rely upon this notion that there can be superfluous language. Any committee reports or anything that shows what they were trying to say? I confess I did not go into the committee reports. Maybe in a different world I might have, but this statute, it's a voluminous statute and a very long law. Let me ask you, I mean, we also have A and B. And at first, just as a factual question, I assume that the subject of the pending appeals that you're focused on here were cost reporting periods from before July 1, 2010. Yes. Okay. So we have A and B, and it's so darn hard to figure out where these match up with this act. But I think it's A says that this, what you call a clarifying rule, is effective for cost reporting periods beginning on or after July 1, 2010. Because the way it breaks out, it appears in A and B. But you're right. So there is the dividing line of July 1, 2010 and pre-July 1, 2010. I mean, so we do have a provision here which unambiguously says that this new standard, or let's just call it this new standard. I understand you're saying it's a clarification. It does not apply to your cost reporting periods. And I guess the concern I have is, you know, as Judge McKeague points out, the C itself just says a negative. It says you don't have to reopen these things. And so you want us to imply a positive there, that you do have to reopen ones that are subject of a pending appeal. But it would seem like that in turn negates A. So, I mean, aren't we doing more violence to the statute than simply, than we would if we saw some of it to be superfluous? I don't think so. I don't think we're doing violence to the statute. We're trying to understand what C means, and we're trying to understand what it means in context. But to your point, and maybe to Judge Berthelsen's point in part, is that you've got to figure out, well, why would you ever reopen anything? What did Congress intend when they provided a provision on reopening? And if you had an appeal pending that dealt with those prior cost reporting periods, and that's the only part that we're dealing with here, you would have been under the old law. So why would you go back and apply the old law to something that would be a futile exercise? The other piece of this is... I don't follow you on that point. Why would it be an old exercise to apply the law that, you know, by the terms of these other sections, would be applicable to these cost reporting periods? Because the only reason why you would go back and reopen... Right. ...would be to apply the new standard because the old law was applied before to what you had. So it would be a futile exercise to do that. And the opposite part of this, Your Honor, is this. As of March 23, 2010, there wouldn't be any cost reports on appeal for July 1, 2010 forward. So you're stuck with a snapshot that can really only address our situation. Your Honors, I'm out of time.  Thank you, Your Honor. Thank you. May it please the Court, Henry Whitaker on behalf of the Secretary. We set out our issue preclusion argument in our brief, Your Honors, and unless there are questions about that, I'd like to go straight into the merits. The issue in this case is not about whether settled cost reports should or should not be reopened. The issue in this case is what is the effective date of the new payment standard established by Section 5504 of the Affordable Care Act? And that question is answered not by looking at subsection C, which addresses reopening, which is not at issue here. It is instead answered by the clear language in A and B. In A and B, Congress did two things. The first thing it did was it created a new payment standard. And it made that new payment standard expressly applicable only prospectively to discharges and cost reporting periods that are beginning on or after July 1, 2010. And the second thing it did was it said that it expressly retained the old payment standard that had been in effect for a number of years for cost reporting periods and discharges that existed that were prior to July 1, 2010. So it's quite clear. Congress not only specified the new standard is prospective. It said that the old standard remains in effect. And that's why Covenant is asking for retroactive application of a statutory standard that Congress made expressly prospective. I'm missing something. I don't understand why the argument that you just made isn't any more or less conclusory than the argument that was made by your opposing counsel. Just saying it's true doesn't make it true. You still have to figure out what C means. Well, no. I think it is. C is a – I guess what, Your Honor, I'm trying to do is make a distinction between procedure and substance. C is about procedure. C addresses reopening. Reopening is not at issue here. If it were true that the provision is retroactively applicable in this case, there would be no need to reopen the cost reports. You could just apply the standard on appeal. And that is what happens – that's what's happened in other instances under the Affordable Care Act that are indeed retroactive. For example, in the following subsection, Section 5505, there are aspects of that where Congress, in stark contrast to A and B in 5504, did make the substantive standard retroactive. And in the court decisions applying 5505, the court does not order reopening. It just applies the new payment standard to the cases that are pending on appeal. So in the hospital world, then, what is a reopening that distinguishes – Right. Reopening – Applying new standards on appeal. No, that's not what reopening is, Your Honor. It's that as distinguished from applying new standards on appeal. Reopening just means – and principally it's when a Medicare contractor reconsiders a settled cost report, the reimbursement due in a settled cost report. It doesn't necessarily mean the cost report will be necessarily revised. It just means it can be reconsidered. And so what Congress said in 5504C is that there's no requirement to reconsider. It didn't – I thought the Supreme Court said that in this – your home visiting nurse case. Isn't that what – the Supreme Court said it's discretionary, never required. Isn't that right? Well, certainly that's – Let's start with that. I mean, is that right? Well, we certainly think that as a general rule that's – there are cases that have said we are required in some instances to reopen cost reports. There's the Monmouth case from the D.C. Circuit that said that we are in some instances required to do that. But, yes, it certainly are – and so – but, I mean, Congress could reasonably have thought that taking a belt and suspenders approach and said, look, we just want to make sure that this standard would not be read to require reopening because there have been courts that have required us to reopen. And so I think – Well, I think that – no, that's not quite true, Your Honor, but the principle – but the – well, I think that once Congress said that you can't – you are not required to reconsider settled cost reports, I think it also wanted to avoid any inference that, when you do have a jurisdictionally pending appeal, which are by definition they're open and at issue in jurisdictionally pending appeals, that whatever substantive standards may apply to those appeals, it was leaving those procedures undisturbed. So Congress was giving the Secretary something, but at the same time it didn't want to take away something from the providers, namely that whatever substantive standards and procedures would normally apply in pending appeals would apply, notwithstanding the fact that it's creating this standard that says you can't reconsider these settled cost reports. They can be reconsidered in a settled appeal. It just so happens that the law that is applicable to these jurisdictionally pending appeals, you'd have to apply the payment standards in the years that Congress specified. I could be wholly off base here, but if that was their concern, wouldn't they just take the word not out of this, where it says to which there is not a jurisdictionally proper appeal? Well, I guess if Congress didn't have that in there, Your Honor, there might be some inference that you could draw that you could not reconsider, even in the context of a jurisdictionally pending appeal. But keep in mind, Your Honor, as I tried to say at the outset, even under their reading, that language is somewhat superfluous because, again, even in the context of a jurisdictionally – reopening is not really necessary, even in the context of a jurisdictionally pending appeal, if there is indeed a retroactive standard that applies. Congress could have – as far as covenant is concerned, Congress could have accomplished exactly the same thing if they had just said no reopening of any settled cost reports. So even under their reading, it's superfluous. But I think where Your Honor started is, I think, the most telling thing, is that even if the provision isn't doing much, it's a lot better to read Congress as creating this provision that's maybe not doing very much. It's a lot better to read the statute to do that than to override the unqualified effective date provisions, which, again, stand in stark contrast to the immediately succeeding subsection of the statute, where Congress did make it retroactive, and it didn't do it in this backhanded, indirect way that covenant is suggesting it did in 5504. No, it said the statutory standard is effective for prior cost reporting periods, and it pointedly did not do that in 5504. So – and I just want to stress, the provision is doing something. I mean – What? I'm still – I have no idea what it's doing. Your Honor, even if the provision is solely prospective, it could be doing two things. First, as Your Honor pointed out, I think, to my colleague, Congress could have wanted to address the contractor's discretion under the old statutory standard in saying that no reopening is required, because it's not true that the only reason you'd want to reopen is to apply the new statutory standard. It's possible that you might want to reopen to reconsider something under the old statutory standard. And again, 5505 also modified the old statutory standard by creating an effective date for prior cost periods. That's point one. So it is doing that. The other thing it could be doing, even as to the prospective standard established, the new standard it establishes, is that for future – remember, reopening – you can go back three years to reopen. So let's say a year on, a year on, some intermediary makes a mistake under the new statutory standard, that you can go back and reopen that under the regulations. And so reopening can happen on a – there is a retrospective aspect to reopening. And so even if the standard is wholly prospective, there could be instances where there would be an issue about whether you'd want to reopen under the new prospective standard. So it does have meaning. But, I mean, doesn't this all assume that something else somewhere in the code or this act would otherwise tell the department you must reopen? I mean, let me – is there a single provision in the U.S. Code or this act – and you know this much better than I do – that would require the department to reopen any of these cost reports? No, but there have been courts – I mean, the Monmouth case in the D.C. Circuit, Your Honor, the court said – What year was that case? That was 2001. The court in that case said that our own regulations required reopening in an instance there. Now, we've since revised the regulations to clean that up, but there have been courts that have said that in some instances – We have the Monmouth case, but there's nothing else that would otherwise suggest that the department's required to reopen anything. Is that fair? That's certainly our view, Your Honor. I mean, that doesn't mean that Congress couldn't reasonably think – well, let's say Congress had made the statute retroactive. The providers no doubt would argue that the intermediaries would have to reopen in light of that. Now, we would resist that conclusion, but there would be an issue, and so Congress could reasonably think that – again, Congress could reasonably take a belt-and-suspenders approach and create some finality here. Again, this provision is actually – the irony of Covenant's position is that this provision is actually designed to limit the retrospective effect, as a general matter, of these kind of statutes. I mean, it's not designed to sort of – Covenant is trying to use this as a gotcha approach, but it's not – and let's look at the plain language. How does Chevron apply to this case? Well, I think Chevron is quite significant, Your Honor. I mean, we think the plain language of the statute is quite frankly in our favor because literally speaking, the statute says nothing about a requirement of reopening, still less what the effective date of the statute is. But at a minimum, at a minimum, the statute surely is sufficiently ambiguous to make the Secretary's interpretation of it reasonable. We're supposed to work pretty hard before we throw in the towel and just hand it over to the agency to tell us what to do, right? I mean, why aren't they right that there is this negative implication here and that would give this a purpose that it otherwise doesn't have, namely that you are supposed to – this is creating an instance where you're supposed to reopen. I don't think the negative implications of a wholly procedural provision that has nothing to do with the effective date of the statute could possibly override the explicit effective dates that Congress provided for in A and B. In A and B, Congress said in unqualified terms that the new payment standard is prospective only. Does it matter in that sense that this is apparently not codified and is preceded by the word note? What significance is there? No, Your Honor, I don't think that that's actually of any significance. I think that, as counsel said, the public law is a statute enacted by Congress. I mean, sometimes Congress does have purely procedural provisions that are uncodified but are nonetheless law. For example, severability clauses are sometimes codified in this way, in the note rather than in the actual law. So no, we don't attach any significance to that. But we do attach significance to, again – Well, if the argument was that the negative implication controls and they are required to reopen if there is a jurisdictionally proper appeal, how would a hospital even know that? How would they find it if this is not codified? Where would they go to find it aside from poring through the Act itself? Well, it appears in the note to the Code. The note is in the Code, Your Honor. So, I mean, if you did a search – actually, this is how I found it in the note. If you did a Westlaw search for this language in the U.S. Code annotated, you'd find it in the note. So there is a way you'd find it. But, I mean, the hospitals are well aware of what's in the public law. Usually we find, Your Honor. Your interpretation is, I mean, the Secretary can reopen stuff but other people can't? Yeah, that the contractor can reopen stuff. That's right, Your Honor, and that's how this – Okay. It just says that we're not required to. But, in fact, the Secretary's practice, we don't reopen. The issue isn't whether they can. It's the question of whether they have to. And your interpretation is that while they have the discretion to reopen, they're not required to, and she chooses to exercise her discretion. Actually, I don't think that's the issue, Your Honor. Again, I don't think the issue is whether the hospitals were required to reopen. The issue is what the effective date of the statute is, which is a different issue. That's a substantive issue. All this stuff in C is procedural only, and it would be very odd to read a procedural only provision to somehow override or create an exception to the explicitly prospective substantive provision. And if that's not plain language, it certainly passes – What are the other circumstances under which somebody would want to reopen if it wasn't to retrospectively apply this change in reimbursements? Well, as I said, Your Honor, I mean, there could be a circumstance a year on where there's a question about whether the intermediary has properly applied the new standard, and I suppose you could ask for reopening in that instance. But I think the more fundamental point is that the surplusage canon is not the end-all, be-all of statutory construction. The more fundamental canon actually at issue here is you follow the plain language of the statute where Congress creates an unqualifiedly prospective term. You have to honor that, and you can't look to negative implications from a purely procedural provision. That is not sufficient to overcome Congress's plain language. But at a minimum, it is reasonable. I see my time has expired, Your Honor, but I'd be happy to answer questions in particular about the issue preclusion argument. If we did get to Chevron, the second stage, which of the Secretary's many sort of issuances about this section would you tell us we need to look at? Is it the new 41378G6? Yes. I think that is the operative regulation, Your Honor. As you know, in response to professed confusion over what the regulations meant, we did issue a regulatory clarification. It sounds like at first you agreed with them, right? Absolutely not. No, that's absolutely not true, Your Honor, and I think Covenant misrepresents this somewhat in that agreement. I don't want to hear about them misrepresenting anything. Okay. No, that's fine. But when we promulgated that regulation, we said, look, we think that the prior regulation is absolutely clear, but we're clarifying this because there have been questions raised about the application of our regulations. And so, I mean, we can do that. I mean, it's a regulatory clarification. It's not applying the regulation retroactively. It's clarifying it and which agencies are entitled to do. Okay. Thank you. Thank you.  Mr. O'Reilly. So there's a lot of meat still on this bone. Brother Counsel talks about three being procedural only, I think. I'm not sure where you necessarily get to that point, particularly when the word that precedes it, the caption, says it's application. It's talking about how you apply those sections. So I don't think you're going to leap as quickly as he's leapt into the notion that this is procedural only. And that, frankly, is where a whole lot of his arguments sort of fall down. Why would, when you say how to apply something, let's say that something is substantive, if you have something substantive and then you're talking about how to apply that substantive provision, why wouldn't that, by almost definition, be procedural? I'm not sure that I quite grasp it. I can see something having both, and they can have a procedural aspect to it and also a substantive aspect to it. When I look at that provision, I see that it tells us what to do with a specific body of cost reports that are out there and how to apply the rest of the law to it. I'm not sure that the distinction that he's drawn, particularly when you use the words application and required that that section has, that there's any aspect to that that necessarily says that it's procedural. And, frankly, I'm still trying to grasp what the Secretary says that statute means. I mean, there's a body. He started out with a regulation that, to me at least, says pretty clearly that you have to reopen. And then there's four years of various iterations until today, and, of course, we don't defer to a litigating position in briefs or an oral argument, but some of this I don't think has been. Well, the final rule that they have most recently come out with, that is something that. . . That rule, after quite a bit of litigation, is more clear on this point. If we got to that point, I mean, we have to take that rule as it is and not sort of discount it because there have been these changes of position before it, right? Well, I'm not sure that that's completely right. I'll admit that when you have a circumstance such as this where you have a case that's been going on for some period of time, some of the traditional canons of deference and the reasons why you reduce the amount of deference don't come into play because it's not a brief, it's gone through this procedure. But I would say this, that you still need to look at how it is they came to that position and what it says. And does it still make sense? And does it still give you anything? And at the end of the day, what they're left with is a statute that they say is superfluous. I find that to be somewhat dangerous ground to go down. Congress said something. They meant something when they said it, and we need to figure out what it is. And in agency cases, I'm not sure that we can sit here and say that Congress just, we can just write that out. But that's effectively what it is. Well, let's grant your point, hypothetically or for argument, that their interpretation does render C superfluous from the point that you've marked. Again, the contrary concern is that A and B do unequivocally say that this new standard does not apply to your cost reports that are subject to the appeal. And you want us to read a negative implication, if I understand your argument, in C, to create an exception to that express effective date in A, to carve out old year cost reporting that is still the subject of a pending appeal. Is that a fair assessment? That is fair, except I'll add an additional point to that, Your Honor. And that's Congress didn't say everything is open and free game. They didn't say that. Right. They're dealing with a situation where if you abandoned your appeal before, so be it. And prospective application is a different situation. What do you do today about those hospitals that have challenges? And I think that that's what they did in that portion of C. And it's not overreaching. It's not overbroad. It's not without limits. It covers something in particular and doesn't cover just a procedural how you get in the door. It's covering a snapshot of existing cost reports that are out there. Would it be fair to say that, at least generally speaking, Congress is trying to treat like-situated applicants, in this case hospitals, equally and fairly? Well, I think that's probably correct. But what would be the point of Congress having intended the negative implication that you're suggesting, that you then end up treating those hospitals that, for whatever fortuitous reason, happen to have an open appeal at the time of the act differently than those that, for whatever reason, don't? Why would they do that? So you've got two like hospitals. One gets it, one doesn't, for the exact same GME services. I'm not sure that I can dive all that deeply into what Congress intended, but I can say that whenever Congress makes a switch in the law, which is undisputed here, it's undisputed that Congress wanted to do this. They wanted to improve the position of the hospitals. It would have been a rather enormous thing to say, you go back in time as far as you want, if you didn't have an appeal, go back to 1986 when we started doing this and we're going to change the law. They didn't do that, and there's no indication that they did that. But they said, for this circumstance, we're going to require the reopening in the negative inference that you said, except that in the way that I interpret it, Your Honor, you have to apply this canon and figure out, did they mean anything else other than what we've offered? And I still haven't heard it. And frankly, in reams of Federal Register writing on this, I think their position is still changing. I'm not sure how under those circumstances you can give Chevron deference to an interpretation. Thank you, Your Honor. All right. Thank you, counsel. I'm sure we'll be litigating the ACA at this level and others for time to come.